And our last appeal this morning is Tillis versus the Columbus Police Department. Okay, I think we're supposed to see Mr couch to on the screen. I know Miss Tucker is going to be participating by phone. Okay, Mr. Just want to make sure we had everybody. Okay. Mr Christina. Yes, sir. You speak with us please. Yes, Your Honor. Thank you. My name is Thomas Christina and they please the court and good morning. It's my privilege to represent the appellants. In this case, Your Honor, this is a Fourth Amendment excessive force case where 21 shots were fired in less than 13 seconds, following an extended 14 minute high speed pursuit and crash, and Your Honors are well aware of the standards that is a constitutional Fourth Amendment case involving qualified immunity issues. The district court, whom I have an immense amount of respect for got it right. With respect to the first 11 shots. He unfortunately got it wrong with respect to the second 10. And I would like I'm going to get to the facts in a moment, but I'd like to point out the clear law in this case with respect to qualified immunity, which requires clearly the right to be clearly established with specificity, and that except in obvious cases of obvious clarity, where constitutional rights are violated. The standard requires identifying a controlling case where an officer was acting under similar circumstances was held to have violated the Fourth Amendment. And in fact the Supreme Court and demons in 2019 pointed out that in the Fourth Amendment context that where the court has recognized that it is sometimes difficult for an officer to determine how the relevant excessive force legal doctrine will apply the factual situation. The officer confronts specificity is extremely important, and that you we so I've watched a video here. There's only one right that that would that would be informative of both rounds of shots. That is the car dash video. Correct. And it shows what happened. Immediately before the first round of shots that is the plaintiff's car went went into reverse after the officer stepped out of his vehicle. Correct. And, and, and then Judge land said that what was unreasonable was an excessive. At least there would be evidence to support it was the second round of shots. We hear that on the video but we don't see that on the video, there's, there's no video that would show us that right. Correct. I know the officer and testified that he heard the engine revving, but it seems that the record has some dispute effect about that. Am I right to just say though, that there's no dispute that the engine was at least running. Correct. You are correct in that. And, and that the lights of that vehicle, we're on. Right. Yes, sir. Okay. And, and what separates the first round of shots from the second round of shots is approximately six seconds while the officer loads, a new clip. Is that right. Yes, Your Honor, with the additional facts that he was loading the clip off balance after having nearly been run over. It was, it was just under just that six seconds before he elected to fire the second 10 rounds of shots. Okay. That's what I want to do that. Yes, sir. And, and I would add that the record is also undisputed that it was a dark area in a residential neighborhood, where the only other sorts of light was an unlit lamppost. And I'm going to focus my argument runners on the second 10 shots because I think that's, that's the harder part of the case. This court has issued a opinions preceding. Before we get to that. Yes, good. Good. And this is dozen or eight sentences but it seems to me like judge lands reasoning on the second round of shots set out page 28 and 29 of his order and this is this key read these and want to ask you, which one of them. Cannot be supported, based on the plainest version of facts that is the evidence in the record construed in the light most favorable to the plan. Under this version of the facts, Brown was 15 feet away from the Pontiac when he reloaded as well. Six seconds after the first 11 shots but before the second round did not seek cover instead he began walking toward the Pontiac, which would either either slowly rolling backwards, or I'd come to a general stop to effect an arrest. Then he shot an additional 10 bullets. The Pontiac never moved forward toward Brown. And under the plainest version of the facts Brown so a justification for the second round of the shots allowed revving noise that prompted him to believe the Pontiac might be accelerating towards him, did not happen. All right. Now, you may dispute that those are the facts but do you, which of those facts do you dispute that the evidence interpreted in the light most favorable to these planets wouldn't support that statement of fact, I don't dispute any of those respond as to how judge land got it wrong with that respectfully to judge land, because the standard is an objective one, and an officer in that situation would have been thinking about not only the Pontiac which is the deadly weapon, he would have been thinking about the other officers who are rapidly approaching the scene including officer Turner, who we know is very close. He would have also been thinking about the citizens who were in the area. The suspect had already crashed into one residential front yard. He was heading into a neighborhood in Phoenix City. It is gently. So, is your argument Mr. Mr Christina. I want to make sure I understand it is that if the officer. Could have reasonably fired the first round of shots that as he faced that car that was a threat to his safety. Because the car was still running. The lights were still shining in his face that that that that dangerous weapon that car was still available and he didn't have to wait and hope for the best. He could continue to use force to neutralize that threat. Yes, sir. Your Honor, that's, that's my argument and it comports with the court's cases. I didn't specifically get into the facts of the McCullough Antolini case in our brief, although it's cited in that case the officers, actually there were three rounds of shots. The third round coming as the car was literally driving away from the officers and the officers ran alongside it and engaged in something that was dangerous enough that one of them warned, watch the crossfire. If in that case, or cost new constitutional violation was found, and certainly none would be found here, because, as in that case there was no teams though that judge land seems to be that his thought process was that because that vehicle had come to a stop or was gently still rolling backwards, that it never know it no longer pose the same threat that it did when the first round of shots was fired, and it was moving toward the officer. Right. Yes, sir. And I agree that's where he was going with it but he is imposing an interlude in the action that cannot be imposed upon reasonable officers under those circumstances. Circumstances simply didn't allow time or require officer Brown to step back and as you as you stated as the case law is clear to wait and hope for the best. And literally, the second Bali was fired, nine seconds after the event the games began so it's an incredibly tight set of time. And as in the McCullough case where there was no interlude, this was a fluid event that has to be taken in context with all that leading up to it, the chase, nearly being run over, having to reload off balance, not knowing whether or not he had incapacitated the driver of the car, and under, and then being faced with the car still in front of him again after the first round of shots, and in those circumstances, a law enforcement officer if they wait. They could be killed, and to focus again on the qualified immunity argument. At that time, officer Brown couldn't be expected to parse the cases, the eight cases that precede all of which are cited in our brief that preceded the event. The original one being pace and leading all the way up and including McCullough and others all tell officers that they're entitled to use deadly force. If it's initially justified until the threat is clearly over. And that of course comports with the four Supreme Court cases that we cite, beginning with Bruce so Mr Christina I want to ask you some questions about because of the related nature of your argument between the first shots on the second shots I want to make sure I understand the facts about the first shots. So, here there was there's no indication that the occupants of the car had a weapon. Is that right, that's correct your honor. And there had been a high speed chase that preceded the car wrecking or coming to a stop, but the car had not been used as a weapon. In other words, the, the folks in the car had not directed the car and an officer or anybody else at that point. Is that right. Yes. Okay. And so the question is whether officer Brown could have thought that he was could reasonably have thought he was in danger by virtue of the car backing up. Is that right. Yes. Okay. And was there anything other than the fact that the car began backing up to support a reasonable belief, only the circumstances leading up to it, Your Honor, given the high pressure situation that was involved is somebody would engage in a chase of that magnitude crossing state lines and so long, and then put the car into reverse towards the officer so the threat of the vehicle is the justification for after the, after the officer left the vehicle and is standing nearly behind. Yes, sir, Your Honor, and the facts are in this record based on their own expert or undisputed that officer Brown was very close to the right and rear that vehicles that came into reverse, and given the authority, the Legion authority. That's everything right that's everything you've got for the first set of shots. Yes, Your Honor. That's right. Is there any case that speaks only have a high speed chase and I was some of the cases mentioned that the car was directed at officers or run into the path of oncoming vehicles. Is there any case that says, simply the fact that there was a high speed chains can create sort of an inference of danger for the officers, what I think Scott v Harris was one in the Supreme Court and then if you look at long be Slayton in that tragic case, the young man was killed simply because he got into the police car was driving away and gently. All right, but the court residents reasoning in the long case on the fact that it was a police vehicle. Yes, but then I would rely on Scott v Harris which was which was which was just a chase. And I think pressures as well. I'm not sure but I've come together many of those but I believe pressures as well may have just been a high speed chase. My time is expired. Joe party having more questions. No. Okay. Yes, sir. Yes, sir. Mr. Christina, you save three minutes for rebuttal. We'll hear next from Mr couch. Good morning, Your Honor, thank please court my name is Steve couch I'm from Hoover, Alabama, and I represent the estate of Christian red wine. Your Honors as you know this appeal involves both an appeal from them and one from us so what we've done as counsel for the Apple ease for this part we've divided this case topically, I'm going to speak to what's been referred to as the first volley or first round of shots, Mr pose, who represents Hannah one show, he's going to speak to the second round of the second volley of shots, and Miss Tucker Renee Tucker who represents hunter tell us, she is going to speak to any remaining legal factual issues and hopefully correct anything that I mess up. Your Honor, at its core, our, our heel is that the port below judge land respectfully to him. He got it wrong in the first volley shots and the problem for me is that you probably know I was on the panel and single Terry versus Vargas, and, and we, we held that the sheriff's deck deputy there acted reasonably when he used deadly force against a driver who he reasonably believed was trying to run over him with a car that looks to me like the first round of shots at least. Well let me tell you why that's not an accurate factual conclusion anyway, judge in fact it's, it was the conclusion that was reached by judge land. When he decided as a matter of law, actual questions that should have been left to a jury, let me tell you what I mean I'm just going to give you two examples I've seen the I've seen the video. Okay, I know the officer has left the car. I know that it's it. He's standing behind it from from the way the shots entered the car, including through the rear view when I know that the car has backed up in the direction that he has just left the car. What am I missing. Well you're what you're missing judges where he was standing in those first three to five shots anyway, was in the video of his car, or just outside the open door, and it's gonna have to be standing directly behind it to be standing near enough to reasonably perceive it to be a weapon that was the case in Singletary versus markets, where you have to have an imminent and immediate threat of physical harm or danger he was in a position of safety, and we can show that with a testimony of hunter till and the missing body camera that was never produced in this case, and that officer Brown was wearing that morning according to his commanding officer according to the sergeant, and according to other to other high level officers who said it would make sense that he had it. When he was under closely monitor you. So you, your position is if you had the missing video or tape or whatnot. You could prove your case, it would conclusively show where he is and it's a piece of objective evidence, but, but you don't have. I don't have it because we think we captured on video officer Brown spoliating that evidence, and it was captured that act was captured. What did the district court. Did you ask the district court, have a hearing and give us an order or an instruction that we can get past summary judgment with that the jury will be required to find that as a fact that he was in a position of safety and wasn't about to be run over is, is that how you preserve the issue. I brought it up at some no judge to answer your question directly but I did bring it up at summary judgment and told him there was evidence of this missing body cam that would show that he was in a position of safety. Candidly, there's no other reason for him to have gotten rid of it. If it showed what he said it. I'm having difficulty finding how you preserve this issue, other than complaining about the fact that the evidence didn't exist anymore and you, you expect that he destroyed it. The district court to rule in this case that it was an, it was a fact that not that he spoiled the evidence, but it was therefore a fact that he was in a position of safety and wasn't about to be run over, and so forth and so on. Did you ask for that. I didn't ask for that because it creates a genuine initial fact that should have been sent to a jury judge is the only thing it could have you have an obligation to tell the judge what the facts are that would create that genuine issue. I did, I did judge and he said it what he said to me was well, I'm not going to put much weight on that Mr Christina was certainly appealing me if I did that. I don't know why I said that judge honestly and there's a number of other factual determinations that he made about where also brown was standing and that's the crux of the case. And there's evidence that he was behind his engine block position of safety where he was praying to take, and he could fire from that and he didn't start firing from that shot eventually moving closer to the car but I know those first three to five jobs being seven were taken from a position of safety and there's genuine issues the fact regarding that, and he should have sent that to a jury judge, Mr. Mr couch what, what is the significance of the plaintiff's testimony that he was standing between the car and the door and the via the door of his vehicle, because it's further evidence and by the way that that that testimony matches what officer brown told the Alabama law enforcement agency, it shows that he was in a position of safety behind his engine block behind his car behind his door. That's where you're trained to be wasn't wasn't the door on the same side as the plaintiff's car. He was the point of view of his car and his patrol car door, and the end up playing his feet the Pontiac was in the front, and it was backing up. And what would have happened if Pontiac had hit that door was full force. It could have gotten there from the angle that it was sitting judges now it's not possible. The car is not big enough to do that. So what difference does it make that he was behind the door if the car couldn't have gotten there anyway, because he shot from a position of state safety at least that's where you started shooting from and you're being inconsistent, seems like me Council let me tell you why I think that either that door added protection to him, or it did not. If the car. If the door was between him and the car. That is no protection at all. If the defendants theory is that the car was headed towards. You just get sandwiched and crushed to death. If the car hits a door and that situation, so that the existence. I don't understand how the existence of the door adds anything. Well, the hit with the door against his body, or his body is going to be hit, or he's not going to be it, and if he's not going to be hit the door is a row. Isn't the significance of the door to show where he was where he was standing with respect to his car and the other car. That's part of a judge prior and it, you know, the door does offer you protection that's what they're trained for felony stops the engine block the car and the door, he could have backed up anything, but that's the point. That's where he was standing a position of safety he could not have been run over by that car that was backing up at this angle right here. And, you know, it's certainly contradictory to the four other places that he placed himself when he's talking to various, he being officer brown talking to various other investigatory agency, I mean, it changes. Mr couch we've led you to go significantly over but you've been answering our questions and, and we appreciate it, we need to hear from Mr post. Please support. Good morning. My name is Mark post I represent Hannah Winchell, young lady, the blonde haired young lady that I'm sure each of you have seen in the video. I am as Mr couch said to address the second volley of shots that was fired the second volley of 10 shots, where I think Mr Christina. Mrs. The point is where in their reply brief they say that it is axiomatic that once deadly force became justified brown did not have to stop shooting until the threat was clearly over, and the same was fully secure. While that may be true. To some extent, our Sean but teach opinion certainly seems to support that argument. I didn't hear you judge our john but teach decision certainly seems to support that argument. Yes, they cited that in their brief but I think that is distinguishable as judge land distinguished all of these cases in his order. And we have distinguished them in, in our brief in that situation changed. If that was the argument in john but teach the gun and fallen on the ground. And therefore he should have stopped the volley. Right. At that point and we said that he doesn't you know that whether on the ground or in his hand. It's still readily accessible, and the gut the officer doesn't need to stop and hope for the best. You know if the officer was threatened reasonably enough to where he could, he could fire the first volume shots, and this car is still running the lights are still on, and it still poses the threat to him. Why isn't it the same argument that he doesn't have to wait and and hope for the best. I think it's bad taste is different because, in that case, there was some evidence that the officer did not have or may not have seen the file on it was not in Maybe I'm confusing it with another case. I know your honor was on that case. But I think it is distinguishable in that the farm. The police officer knew he was on. And the farm was not very far away, and thus it is very easy to discharge a firearm. From any distance, the vehicle. Pretty easy to hit the accelerator to have a car. That's true, but not after 11 rounds have already gone into the car where the police officer was in a position safety and did not did not fall back but instead chose to go forward toward the car and I don't, we use a 15 foot difference or distance from the vehicle for the second volume shots but I think that is for the end of the shots because where the car where the patrol car was was on a slight hill, and as the police officer went up the hill to approach the Pontiac, on the other side of the road, and you can hear when he during the interlude as brown described it as a second engagement, you can actually hear the magazine hitting the ground. And from that point, the evidence would show that that brown moved kind of in an arcing position towards the Pontiac and reengaged it. And when he's doing all that he has plenty of time to see that the vehicle is disabled it had rolled very slowly back across the road, Hannah Winchell was screaming this whole time her window been shot out you can hear her on the beach he's screaming she's not the driver. That's right, that's right. The lights are still on engine still running. How is the officer to know it's been disabled. Because no longer poses a threat to him. It's not, it's not moving he can say that he can assess the vehicle. If you take it that once that he does not have to reassess that point. We have a number of cases that say you do have to reassess and and if you do not, then you're violating constitutional rights. If for instance, and do it. Do any, either of my colleagues have any further questions. No. Okay, Mr post I think we understand your argument, your time has expired. Miss Tucker, you still have you have five minutes. Will you speak with us please. Yes. Yes, you're able to hear me. Yes. Yes. Thank you. May it please the honorable court. Just in assessing the questions that the court has asked up to this point. We think that it's important to reiterate that we understand that what this court says matters. And as the court noted in an earlier oral argument today what the Supreme Court says matter, because these cases in your circuit in 11th Circuit and in the Supreme Court, they are instructive to the courts below. And we do believe as we've indicated in our brief that this court has given us instructions, they've given us instructions in bond versus Cox, and as judge prior asked earlier when Mr Christina was speaking, what do the cases about high speed chases actually say when it comes to the use of force bond because is extremely instructive because there you do have a police chase. You have a police chase that started and you have a police chase that ended, you have a situation where as judge prior noted that the vehicle the Pontiac in this particular case throughout the chase that Pontiac is is not documented anywhere that that car presented a harm or a threat to anyone. Once that car stopped, there's still no evidence from the plane is from the problem is, Mr Tucker as soon as that vehicle engages in reverse. After the officer has left his vehicle. I would say it poses a threat that respectfully your honor we would disagree we believe that the facts as have been presented shows in this court. When questioning my co counsel earlier at a couple of times about that issue. And if you look at the word behind. Yes, theoretically, was the police officers vehicle behind the Pontiac theoretically yes but it was behind the Pontiac and off to the side. So the question is not what officer Brown. That's a lot like single Jerry versus Vargas, where the officer is approaching the vehicle and as he approaches it to the side, close to the front. The vehicle moves, and he immediately fire shots because he perceives it as a threat. We've, we say motor vehicles are dangerous weapons, and we, we said the officer was entitled to qualify to me. And your honors respectfully we believe that single chair is certainly distinguishable I think the facts and single chair there was more evidence that the officer was actually physically approaching the vehicle, taking the facts in the light most favorable to the appellees and I know that this officer was at least approaching the vehicle in the sense that he had left his own vehicle. And was closer and closer to that vehicle than he had been in a more precarious position than he would have been had he remained in his own vehicle. And your honor, that's why we believe as the course is indicated in single chair and the other 11 circuit guiding opinions that each fact matters in this particular case, each shot matters. When we're looking at that first value of shots, every shot is important. When you see where shots one through five when we still have to evaluate shots six through 11, because at a certain point in time you have an officer that is faced with the vehicle that from the appellees and cross appellants position he was never physically behind it says that he was actually in harm's way from an objective officers position. But then as that vehicle continues to move past him doing this first value shot he shooting into the side windows of a moving via a vehicle that's moving away from him. Some of the shots. Yes, one through five your honor's Yes, but when we look at that he was at least standing enough behind it to where that was where the shots went. Respectfully know your honor we believe that he can be standing off to the side of that vehicle and still make those shots based on the trajectory. This is the issue of one from. I'm sorry if I interrupted the court. That's right, but, but it's, but it's not just beside it's enough behind to. And it still raises the question as to whether or not when we're looking even at those shots whether reasonable officer would have done in that position. We believe that the facts at least as they have been presented, show a case where you have also brown arrives to the scene, after the vehicle was stopped. You have the Pontiac attempting to reverse when Officer Brown is still in a safe position. And from that vehicle, and in order to stop that vehicle from fleeing, he began shooting. So that is the analysis that we're saying that that should have been utilized in the court below, and we believe that bond the Cox is one of those cases that's extremely instructive. And when we also look at Tennessee the Gardner, those cases tell us and they tell Officer Brown that he should not have been shooting at that particular time, because there was no harm. Council bond involved an entirely different situation, which was speeding down the interstate. As I recall, it was 85 going into Atlanta busy highway. And the officer was shooting at the plaintiff's vehicle with other cars around it, while the police officers car was being driven at a high rate of speed. That's a different question, then, then you have here. Yes, sir. But when we look at the on the continuing facts in that case, you have a driver in that case that refused to stop, you have a situation where the where the driver was suspected of car theft, that was the extent of the suspected crime. And you have a driver was not I believe we said in that case, not to have that the police officers enhance the danger to innocent people and enhance the dangers to others than the plaintiffs. In that case. Yes, Your Honor, but we believe the premise of that case shows us that in a situation where an officer is faced with no severe crime a suspected car theft, for example, no immediate threat to the safety of others as this vehicle is backing and moving away from the vehicle he knew where they will he knew where they lived and could be apprehended later. Okay, Mr. I think we understand your argument. And we've got three minutes left for Mr Christina. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Vaughn is also distinguishable. Judge Carnes on the basis that the speed of the car, I believe it was only 10 miles an hour over the speed limit. And the court had some concerns with that. By contrast, our case, the Pontiac reached 107 miles an hour on a 65, maybe 55 with that JRL location is, and then had the obvious events leading up to that work going through residential neighborhoods down running red lights stop signs. A much different chase. Your Honor. In this case, Officer Brown was confronted with a situation that never stopped in that last 13 seconds. He didn't have a chance to pause. He paused and assumed hope for the best. He might have been run over. He didn't have the ability to know whether or not hunter Christian red line was dead. He didn't know those things he couldn't know he couldn't see in the car headlights were in his face, it was dark adrenaline was racing through. He'd nearly been run over. Under those circumstances, the body of case law in this country Supreme Court 11th Circuit. Not only says it's okay what he did. But if it wasn't, then this would be new law, there is no case in the 11th circuit that would have told Officer Brown that night, you can't fire those second 10 shots. There are cases that say you can fire the first 11, and the second 10 we believe, but there's certainly none that would have told them. Okay, wait a minute, that car is rolling to a slow stop. You got to wait and see what happens next. If we want to establish a rule like that in the 11th circuit, and certainly that may happen. If that does, we disagree with it, he would be entitled to qualify to me. Those would that would be a new case, and Officer Brown would be exonerated for the existing facts. We believe Officer Brown got it right that no doubt it was a tragedy. But in that circumstance, he didn't have time to parse the case on even if he had, he wouldn't have seen anything to tell him to stop. What he would have seen was, you have the right to use deadly force until the threat is clearly over. And when was that to him. That was when hunter tell us got out of the rear left passenger seat. And he was reloading his third magazine, he testified to that, but he saw hunter tell us get out. He couldn't tell if he was, he assumed he was the driver, because he got out of the driver's side. It was the wrong assumption. Christian red wine been alive, he might have been dead, but he made the assumption that was till us and he stopped that was the interlude in the case and that's why deadly for stop that night. That was the correct decision for Officer Brown, your honor, appreciate your time we asked that you affirm judge land with respect to the first 11 shots and reverse him respectfully, with respect to the second 10. Thank you very much. Thank you, Mr. Christina. That concludes our arguments for today. We will be in recess until tomorrow morning.